FILED
17-0557
6/19/2020 6:05 PM
tex-43906802
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# IN THE SUPREME COURT OF TEXAS

No. 17-0557

CLINTON W. ("BUDDY") PIKE, SR., DANIEL L. WALKER, W. TOBIN WILSON,
VHSC CEMENT, LLC, AND FEW READY MIX CONCRETE CO., PETITIONERS,

v.

TEXAS EMC MANAGEMENT, LLC, TEXAS EMC PRODUCTS, LP,
AND EMC CEMENT BV, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TENTH DISTRICT OF TEXAS

JUSTICE BLAND, dissenting in part.

A limited partner does not own the limited partnership's claims. The partnership does.[1] The

partnership is an entity unto itself, not an extension of individual partners asserting their individual

interests.[2] For this reason, a limited partner lacks standing to personally recover for injuries to the

limited partnership.[3]

In a dispute among partners, it can be unclear whether an individual partner (1) seeks to

recover for its personal injury, (2) improperly seeks to personally recover apart from any injury to

---

[1] *See* TEX. BUS. ORGS. CODE §§ 152.056, .101, .211(a); *see also Wingate v. Hajdik*, 795 S.W.2d 717, 719
(Tex. 1990).

[2] TEX. BUS. ORGS. CODE § 152.056; *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 431
(Tex. 2015); *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463–65 (Tex. 2011) (orig. proceeding).

[3] *See In re Fisher*, 433 S.W.3d 523, 527–28 (Tex. 2014) (orig. proceeding) ("'[A] limited partner does not
have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest.' But . . . a
partner who is 'personally aggrieved' may bring claims for those injuries he suffered directly." (quoting *Hall v.
Douglas*, 380 S.W.3d 860, 872–73 (Tex. App.—Dallas 2012, no pet.))); *see also Wingate*, 795 S.W.2d at 719.

the partnership, or (3) seeks to represent the limited partnership in a derivative capacity to redress the partnership's injury. The Court attempts to resolve that confusion by holding that a limited partner's individual claim for an injury to the partnership does not implicate standing, and thus a court has jurisdiction to award damages to an individual limited partner for the partnership's injury.[4] But empowering a partner with standing to directly recover a claim for the partnership's injury conflicts with a partnership's status as an independent and separate entity that owns any claim that seeks redress for its injuries.[5]

Courts have no power to grant judgment to a party for a claim that does not belong to it.[6] To invoke a court's power, a limited partner must either establish its own personal injury or else invoke the Business Organizations Code's derivative-standing provisions and recover for the partnership's injury on the partnership's behalf.[7] The Court's holding suggests that, even if a limited partner lacks a personal injury, the limited partner can circumvent the partnership, personally obtain standing, and recover directly for the partnership's injury. Permitting that circumvention ignores the Business Organizations Code's derivative standing provisions, which require that a limited partner bring a derivative claim on behalf of the partnership.[8] It further

---

[4] *Ante* at Part I.

[5] *See* TEX. BUS. ORGS. CODE §§ 152.056, .211(a); *see also Fisher*, 433 S.W.3d at 527.

[6] *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018) ("[U]nder Texas law, the standing inquiry begins with determining whether the plaintiff has *personally* been injured, that is, 'he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury.'" (quoting *Heckman v. Williamson County*, 369 S.W.3d 137, 155 (Tex. 2012))).

[7] *See* TEX. BUS. ORGS. CODE §§ 153.401–.413; *see also Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279–80 (Tex. 2016).

[8] *See* TEX. BUS. ORGS. CODE §§ 153.401–.413.

undermines the central tenet of every business organization: they stand independently, distinct and separate from any individual stakeholder.

Our decisions in *Dubai Petroleum Co. v. Kazi* and its progeny do not dictate that derivative standing is a bygone vestige of corporate law. Rather, those decisions are based on the principle that an aggrieved party must first allege facts, and eventually demonstrate, that the party has standing to assert an injury.[9] In the business organizations context, derivative-standing statutes are not procedural prerequisites. Rather, they open an avenue for a business organization's stakeholder to derive standing to recover on behalf of the organization. But the recovery belongs to the partnership, not the stakeholder.[10] Derivative standing implicates *ownership* of the claim, not whether the injured party meets gateway criteria to sue for an injury it owns.[11] The latter is the problem that *Kazi* and cases like it address in holding that procedural hurdles do not implicate subject-matter jurisdiction.

The Court's conclusion that a limited partner's assertion of the partnership's claim does not implicate standing to sue derives from a sentence in our decision in *Pledger v. Schoellkopf.*[12] That decision is incompatible with modern business organizations. *Pledger* examined neither constitutional nor derivative standing, much less standing for limited partners. Limited

---

[9] *See Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000) (holding that failure to prove statutory prerequisite did not deprive court of subject matter jurisdiction because the claim of injury "was within its constitutional jurisdiction").

[10] *See White v. Indep. Bank, N.A.*, 794 S.W.2d 895, 898 (Tex. App.—Houston [1st Dist] 1990, writ denied); *see also In re El Paso Pipeline Partners, L.P.*, 132 A.3d 67, 120 (Del. Ch. 2015) ("[R]ecovery in a derivative action generally goes to the entity . . . .").

[11] *See, e.g.*, *Wesolek v. Layton*, 871 F. Supp. 2d 620, 633–34 (S.D. Tex. 2012); *Shurberg v. La Salle Indus. Ltd.*, No. 04-15-00320-CV, 2016 WL 1128291, at *6–7 (Tex. App.—San Antonio Mar. 23, 2016, no pet.) (mem. op.); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250–51 (Tex. App.—Dallas 2005, no pet.).

[12] *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988).

partnerships did not exist at the time. *Pledger* is discordant with the Business Organizations Code and with our holding in *Wingate v. Hajdik*, issued two years later, requiring that a stakeholder claim a personal cause of action and a personal injury to directly recover a judgment.[13] Because the limited partner in this case directly recovered the partnership's damages, we should dismiss its recovery for want of jurisdiction.

## I

## A

The foundational trait of a business organization is its independent-entity status, distinct from the stakeholders who comprise it.[14] The perennial business organization—a corporation—enjoys powers that allow it to exist independently. It can own property, acquire debt, and sue in its own name.[15] As long as all abide by the structures and formalities essential to its independence, corporate shareholders are not personally liable for the corporation's debts or torts beyond their capital investment.[16]

---

[13] *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong. . . . [T]o recover individually, a stockholder must prove a personal cause of action and personal injury.").

[14] A "domestic entity"—"an organization formed under or the internal affairs of which are governed by [the Business Organizations Code]," TEX. BUS. ORGS. CODE § 1.002(18), "has the same powers as an individual to take action necessary or convenient to carry out its business and affairs," including, *inter alia*, the power to sue, hold and convey property, and acquire debt. *Id.* § 2.101; *see also, e.g.*, *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 431 (Tex. 2015) ("As a result of the partnership's statutorily confirmed status as a separate entity, a partnership's acts are only its own, not a partner's."); Samuel Williston, *History of the Law of Business Corporations Before 1800*, 2 HARV. L. REV. 105, 106 (1888) ("The general idea of a corporation, a fictitious legal person, distinct from the actual persons who compose it, is very old.").

[15] *See* TEX. BUS. ORGS. CODE § 2.101; *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) ("Under Texas law, a corporation is an entity separate from its shareholders.").

[16] TEX. BUS. ORGS. CODE §§ 21.223(a), .224 (providing that a shareholder's exclusive liability is to pay the full consideration for shares to which he has subscribed); *see Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations.").

Partnerships—and their limited liability variant—similarly exist as independent entities.[17] Partnership assets are the property of the partnership; individual partners have no legal interest in those assets.[18] Like a corporation, a limited partnership is a creature of statute, not an organization created under the common law.[19] In its modern form, a business limited partnership may have thousands of limited partner members whose member interests are traded on securities exchanges.[20]

As with other business organizations, it is the limited partnership—not its individual partners—which owns any claim to redress wrongs done to it. The entity must maintain any lawsuit

---

[17] TEX. BUS. ORGS. CODE §§ 152.056 ("A partnership is an entity distinct from its partners."), .801(a) ("Except as provided by the partnership agreement, a partner is not personally liable to any person, including a partner, directly or indirectly, by contribution, indemnity, or otherwise, for any obligation of the partnership incurred while the partnership is a limited liability partnership."); *see Stowers*, 457 S.W.3d at 431; *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463–64 (Tex. 2011) (explaining the transition from the common-law treatment of partnerships as aggregates to the adoption of the entity theory).

[18] *See* TEX. BUS. ORGS. CODE §§ 152.056, .101; *Allcat,* 356 S.W.3d at 468 ("Individual partners do not own [partnership income and profits] while they remain in the partnership's hands and have not been distributed to the partners.").

[19] Under the common law, a partnership could be formed without an express partnership agreement. *See Ingram v. Deere*, 288 S.W.3d 887, 894 (Tex. 2009); *see also* TEX. BUS. ORGS. CODE § 151.001(5) (defining a "partnership agreement" as "any agreement, written or oral, of the partners concerning a partnership"). The Business Organizations Code essentially adopted the common law's factors to "guide the question of partnership formation." *Ingram*, 288 S.W.3d at 894; *see* TEX. BUS. ORGS. CODE § 152.052(a) (listing factors indicating the creation of a partnership), (b) (listing factors that alone do *not* indicate creation of partnership). A limited partnership, in contrast, requires more formality. *See* TEX. BUS. ORGS. CODE § 1.002(50) (defining a "limited partnership" as "a partnership that is governed as a limited partnership under Title 4 and has one or more general partners and one or more limited partners. The term includes a limited partnership registered as a limited liability limited partnership"). "To form a limited partnership, the partners must enter into a partnership agreement and file a certificate of formation" with the Secretary of State. *Id.* § 3.011(a); *see id.* §§ 3.004(b)(1) (providing that "each general partner must sign the certificate of formation of a domestic limited partnership"), 4.001 (providing that "a filing instrument must be . . . delivered to the secretary of state"), 153.553(a) ("Except as provided by Subsection (a-1), a filing instrument required by this code to be filed by a limited partnership with the secretary of state must be signed by at least one general partner.").

[20] *See, e.g.*, Alison Sider & Christopher M. Matthews, *Energy's Favorite Corporate Structure Falls Out of Vogue,* WALL STREET J. (Mar. 16, 2018, 7:19 AM), https://www.wsj.com/articles/federal-regulators-end-key-tax-benefit-for-certain-pipeline-companies-1521140209 (discussing large energy limited partnerships that in 2018 accounted for 54% of the market value of midstream energy infrastructure companies).

to redress those injuries.[21] Texas Business Organizations Code Chapter 152 governs partnerships, subject to specific provisions for limited partnerships in Chapter 153.[22] Because partnerships are entities separate from their individual partners, these laws reinforce the distinction between a partnership's injury and an individual partner's injury. Section 152.210 provides that a partner is liable to both the partnership and the other partners when it breaches a duty arising under the law or the partnership agreement.[23] But section 152.211(a) confers authority only on the partnership to sue for breaches "of a duty to the partnership *causing harm to the partnership*."[24] In contrast, subsection (b) confines an individual partner's ability to sue to enforce "a right" under the partnership agreement and to "enforce the rights and otherwise protect the interests *of the partner*," not the partnership.[25] Subsection (b) thus permits a partner to redress its *personal* rights. It does not permit an individual partner to pursue, on the partner's *own behalf*, a direct recovery for harm to the partnership.[26] Individual limited partners may sue other partners and the partnership for their personal injuries but not for harm caused to the partnership absent derivative standing.[27]

---

[21] *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *see Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1173, 1176 (5th Cir. 1985); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250–51 (Tex. App.—Dallas 2005, no pet.).

[22] TEX. BUS. ORGS. CODE § 153.003(a) ("Except as provided by Subsection (b), in a case not provided for by this chapter and the other limited partnership provisions, the provisions of Chapter 152 governing partnerships that are not limited partnerships and the rules of law and equity govern.").

[23] *Id.* § 152.210.

[24] *Id.* § 152.211(a) (emphasis added).

[25] *Id.* § 152.211(b) (emphasis added).

[26] *See id.*; *see also, e.g.*, *Hodges v. Rajpal*, 459 S.W.3d 237, 249–50 (Tex. App.—Dallas 2015, no pet.).

[27] *See Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279–80 (Tex. 2016); *In re Fisher*, 433 S.W.3d 523, 527–28 (Tex. 2014) (orig. proceeding).

**B**

A standing challenge to a partner's individual recovery asks whether the partner personally suffered the claimed injury.[28] A capacity challenge asks whether the partner has the authority to recover damages on the partnership's behalf.[29] To pursue an individual claim, a limited-partner plaintiff must establish both standing and capacity to assert that claim.[30]

A court has no power to grant a judgment absent a "concrete injury."[31] Standing limits judicial power by identifying *who* may invoke a court's jurisdiction to recover for that injury.[32] We assess standing "on a claim-by-claim basis," [33] and "if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it."[34] "Under Texas law, the standing inquiry begins with determining whether the plaintiff has *personally* been injured,

---

[28] *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018); *Linegar*, 495 S.W.3d at 279–80; *see also* TEX. BUS. ORGS. CODE §§ 152.210, .211(b).

[29] *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005); *see also* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1559 (April 2020) ("Capacity has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest.").

[30] *See Lovato*, 171 S.W.3d at 848; *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001).

[31] *Meyers*, 548 S.W.3d at 484. Standing flows from the Texas Constitution's establishment of separation of powers among the branches of government and from its open courts provision. TEX. CONST. art. II, § 1; *id.* art. I, § 13 ("All courts shall be open [for] every person for an injury done him . . . .").

[32] *See Heckman v. Williamson County*, 369 S.W.3d 137, 150–51 (Tex. 2012); *see also* Daniel S. Kleinberger, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 BAYLOR L. REV. 63, 91 (2006) ("The direct/derivative distinction is a question of standing, and standing is a matter of injury. The role of injury in standing is doctrinally fundamental, whether the context is the loftiest constitutional matters or prosaic questions of 'good fences make good neighbors.'" (footnotes omitted)).

[33] *Linegar*, 495 S.W.3d at 279.

[34] *Heckman*, 369 S.W.3d at 150; *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000) ("Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case."); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 392 (Tex. 2000) (dismissing only those claims for which the plaintiff lacked standing); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993).

that is, 'he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury.'"[35]

Applying these principles to business entities, we explained in *Wingate v. Hajdik* that "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong"; rather, "to recover individually, a stockholder must prove a personal cause of action and personal injury."[36] We have applied the *Wingate* rule to limited partnerships.[37]

The defendants in this case challenge EMC Cement's standing because EMC Cement is a limited partner that directly recovered for the partnership's injury. In deciding whether a claim belongs to a partnership or an individual partner, a court asks whether the plaintiff "prove[d] a personal cause of action and personal injury."[38] To determine who was injured, a court examines

---

[35] *Meyers*, 548 S.W.3d at 485 (quoting *Heckman*, 369 S.W.3d at 155).

[36] *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).

[37] *See In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014) (orig. proceeding); *see also Guerrero-McDonald v. Nassour*, 516 S.W.3d 198, 204 (Tex. App.—Eastland 2017, no pet.) ("*Wingate* addressed stockholder standing in a corporate context. However, its holding has been relied upon in other contexts when an individual stakeholder in another form of a legal entity seeks to recover personally, including situations where a limited partner attempts to bring a claim individually."); *Hodges v. Rajpal*, 459 S.W.3d 237, 249 (Tex. App.—Dallas 2015, no pet.) (citing *Hall v. Douglas*, 380 S.W.3d 860, 873 (Tex. App.—Dallas 2012, no pet.)).

[38] *Linegar*, 495 S.W.3d at 279–80 (quoting *Wingate*, 795 S.W.2d at 719); *see Hall*, 380 S.W.3d at 874; *Webre v. Sneed*, 358 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2011) ("It is the nature of the wrong, whether directed against the corporation only or against the shareholder personally, not the existence of injury, which determines who may sue." (quoting *Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App.—Tyler 2006, pet. denied))), *aff'd*, *Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015).

the nature of the claim,[39] the partnership agreement,[40] and the circumstances surrounding the injury.[41]

Because a reduction in the value of the partnership is a partnership injury, a limited partner like EMC Cement has no standing to recover directly for it in a judgment.[42] The judgment in this case awards EMC Cement the difference "in the value of EMC Cement's interest in the EMC Products partnership" for Wilson and Walker's breach of the partnership agreement. But EMC's claim is based merely on its percentage of a reduction in the value of the partnership. Only the partnership may recover a judgment for that injury.[43] Any recovery is a partnership asset. Any distribution from that recovery to an individual partner must proceed under the partnership agreement after a complete accounting of the partnership's assets and liabilities (subtracting the partnership's debts from the recovery, for example).[44] A limited partner's personal injury cannot

---

[39] *Linegar*, 495 S.W.3d at 279–80; *Sneed*, 465 S.W.3d at 189 ("Generally, unless standing is conferred by statute, 'a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury.'" (quoting *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001))).

[40] *See* TEX. BUS. ORGS. CODE § 152.002.

[41] *See Fisher*, 433 S.W.3d at 527–28 (holding that damage to credit reputation, lost personal income, and mental anguish caused by co-limited partners met "personally aggrieved" test, affording standing to sue).

[42] *Id.* at 527. In 2019, the Legislature amended the code to provide an exception for closely held limited partnerships, allowing a limited partner to sue directly to protect creditors and the other partners and obtain a recovery "when justice requires." *See* Act of May 22, 2019, 86th Leg., R.S., ch. 899, §30, sec. 153.413, 2019 Tex. Sess. Law Serv. 2395, 2408 (codified at TEX. BUS. ORGS. CODE § 153.413(c)).

[43] *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Shannon Med. Ctr. v. Triad Holdings III, L.L.C.*, No. 14-18-00638-CV, 2019 WL 6606406, at *8 (Tex. App.—Houston [14th Dist.] Dec. 5, 2019, no pet.) (noting that a judgment against a majority partner for breach of fiduciary duty must still be paid to the partnership's benefit (citing TEX. BUS. ORGS. CODE §§ 152.056, .101)); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250 (Tex. App.—Dallas 2005, no pet.); *see also Wesolek v. Layton*, 871 F. Supp. 2d 620, 629 (S.D. Tex. 2012) ("The nature of a limited partner's suit is often critical to an analysis of subject matter jurisdiction because in a derivative action brought by a limited partner, the limited partnership is an indispensable party, while in a direct action brought by a limited partner either individually or as a representative of a class, the limited partnership is not an indispensable party."); *In re El Paso Pipeline Partners, L.P.*, 132 A.3d 67, 120 (Del. Ch. 2015).

[44] *See Wingate*, 795 S.W.2d at 719 (explaining that "the cause of action for injury to the property of a corporation . . . is vested in the corporation," which requires the action to "be brought by the corporation" to ensure

9

include the devaluation of an ownership interest indirectly caused by harm done to the partnership—the partnership as an entity owns that claim.[45] Accordingly, EMC Cement lacks standing to recover for injury to the partnership, and we should dismiss its claim for lack of jurisdiction.

## C

Capacity, in contrast with standing, exists when a party "has the legal authority to act, regardless of whether it has a justiciable interest in the controversy."[46] Because capacity does not implicate a court's subject-matter jurisdiction, it may be waived.[47] For a limited partnership, its governing documents designate who acts with authority (*i.e.*, with capacity) on its behalf.[48] In their limited role, limited partners are not empowered to manage the organization and are not authorized to transact business on the partnership's behalf.[49] The partnership's general partner is the entity

---

"the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distributions to the stockholders as dividends, or for such other purposes as the directors may lawfully determine" (quoting *Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942))); *Shurberg v. La Salle Indus., Ltd.*, No. 04-15-00320-CV, 2016 WL 1128291, at *6–7 (Tex. App.—San Antonio Mar. 23, 2016, no pet.) (mem. op.) ("In the event a stakeholder desires to recover for wrongs done to a legal entity, then the stakeholder must bring the suit derivatively in the name of the legal entity so that each stakeholder will be made whole if the entity obtains compensation from the wrongdoer."); *see also* TEX. BUS. ORGS. CODE § 153.504 (detailing disposition of assets on the winding up of a limited partnership); *Moore v. Simon Enters., Inc.*, 919 F. Supp. 1007, 1009–10 (N.D. Tex. 1995).

[45] *Wingate*, 795 S.W.2d at 719; *see Fisher*, 433 S.W.3d at 527 (citing *Hall v. Douglas*, 380 S.W.3d 860, 873 (Tex. App.—Dallas 2012, no pet.)).

[46] *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996).

[47] TEX. R. CIV. P. 93(1)–(2); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).

[48] *See* TEX. BUS. ORGS. CODE §§ 152.002, 153.152.

[49] *See id.* §§ 153.102, .152; *AHF-Arbors at Huntsville I, LLC v. Walker Cty. Appraisal Dist.*, 410 S.W.3d 831, 843 (Tex. 2012) (Willett, J., dissenting) ("A limited partnership, by law and business convention, ordinarily consists of passive limited partners and a single, corporate general partner who manages the business of the partnership."); *see also Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 351 (Tex. App.—Dallas 2015, no pet.).

authorized to sue to redress harm to the partnership—not a limited partner.[50] For this reason, a limited partner ordinarily lacks capacity to sue on behalf of the partnership.

This is true for the limited partnership agreement in this case. The agreement confirms that EMC Cement (the limited partner who directly recovered partnership damages) has "no management power," no power to "vote on matters pertaining to the management of the Partnership," and no power to "transact any business for the Partnership," or "do any act that would be binding on the Partnership." Thus, under the partnership agreement, EMC Cement also lacks capacity to sue to recover partnership damages.

EMC Cement did not attempt to assert a derivative claim. The Business Organizations Code equips each business organization, including limited partnerships, with derivative standing provisions.[51] A general partner in a limited partnership may decline (for a good or bad reason) to sue for an injury to the entity.[52] When an entity's managers wrongly choose not to pursue a claim for an injury to the entity—for example, when a limited partner claims that the general partner has injured the partnership—a limited partner may seek derivative standing to pursue that claim. Derivative standing empowers a business organization's non-managing stakeholder to assume the standing of the business entity, gain the ability to represent the entity, and recover damages on the entity's behalf, despite opposition or recalcitrance from the entity's controlling managers.[53] To

---

[50] *See* TEX. BUS. ORGS. CODE § 153.152; *see also Leibovitz*, 465 S.W.3d at 351.

[51] *Compare* TEX. BUS. ORGS. CODE §§ 21.551–.563 (derivative action provisions for corporations), *with id.* §§ 101.451–.463 (limited liability companies), *and id.* §§ 153.401–.413 (limited partnerships).

[52] *See, e.g.*, *Gulf Coast Shell & Aggregate, L.P. v. Dredge La Concha*, No. 06-557, 2008 WL 4722433, at *1–2 (S.D. Tex. Oct. 16, 2008) (holding that a limited partnership, owned and managed equally by two partners, could not assert a direct claim because one of the two partners would not consent to the lawsuit).

[53] *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) ("Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the

11

obtain derivative standing under current law, a limited partner must request that the partnership take suitable action, state the claim with particularity, and allow disinterested and independent general partners or appointed individuals the opportunity to investigate and determine whether the partnership should sue.[54] Recognizing that business organizations do not always operate as entities separate from their owners, the Legislature recently relaxed derivative standing for closely held business entities, including limited partnerships, permitting a limited partner to disregard the partnership entity and recover damages against a "general partner, limited partner, or officer of the limited partnership."[55] In such instances, a derivative proceeding "may be treated by a court as a direct action brought by the limited partner for the limited partner's own benefit" if such treatment is necessary "to protect the interests of creditors or other partners of the limited partnership," and the court finds that "justice requires" the court to disregard the partnership entity.[56] Like claims

---

corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949))); *see also, e.g.*, *Guerrero-McDonald v. Nassour*, 516 S.W.3d 198, 207–09 (Tex. App.—Eastland 2017, no pet.) (holding that limited partner lacked standing to sue on claims involving mismanagement of limited partnership but had standing to assert claims under consulting and loan agreement between the partner and partnership).

[54] TEX. BUS. ORGS. CODE §§ 153.403–.404, .408. All the derivative standing provisions feature a demand and determination-by-independent-persons provision. *See id.* §§ 21.553–.554, .558 (corporations), 101.453–.454, .458 (limited liability companies). In 2019, the Legislature amended the limited partnership derivative-suit provisions to harmonize those provisions with the provisions that govern corporations and limited liability companies. *See* Act of May 22, 2019, 86th Leg., R.S., ch. 899, §§ 25–31, 2019 Tex. Sess. Law Serv. 2395, 2404–08 (codified at TEX. BUS. ORGS. CODE §§ 153.401–.413). As we discuss, limited-partner derivative standing requirements in effect for this lawsuit were different.

[55] TEX. BUS. ORGS. CODE § 153.413(b); *see also id.* §§ 21.563(b) (closely held corporations), 101.463(b) (closely held limited liability companies). Closely held limited partnerships have "fewer than 35 limited partners" and "no partnership interests listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association." *Id.* § 153.413(a); *see also id.* §§ 21.563(a) (closely held corporations), 101.463(a) (closely held limited liability companies).

[56] *Id.* § 153.413(c) (emphasis added); *see also id.* §§ 21.563(c) (closely held corporations), 101.463(c) (closely held limited liability companies); *Swank v. Cunningham*, 258 S.W.3d 647, 665 (Tex. App.—Eastland 2008, pet. denied) (noting that, under the closely held corporation provisions, a trial court's decision to treat a derivative action as a direct action, thus allowing a shareholder to directly recover for the derivative suit, does not mean that the action is no longer a derivative proceeding).

for piercing the corporate veil, these amendments provide a remedy when the distinction between the partnership as a separate entity and individual interests has become unlawfully blurred.[57] As they were recently enacted, these provisions do not govern this suit.[58]

Even if EMC Cement had followed derivative standing provisions for limited partners, the trial court nonetheless should not have directly awarded it damages for an injury to the partnership. That recovery benefits the partnership and flows through to individual partners only according to the partnership agreement after a partnership accounting. Establishing derivative standing does not confer *personal* standing to recover for the business organization's injury; the injury belongs to the business entity, and any resulting recovery flows to it.[59]

## II

## A

The *Wingate* rule holds that an actionable personal injury does not include the devaluation of an ownership interest in a business entity that flows from the business entity's injury.[60] The Court reasons that *Wingate* did not use the terms "standing," or "subject-matter jurisdiction" when

---

[57] *See* TEX. BUS. ORGS. CODE § 21.223(b).

[58] *See* § 31, 2019 Tex. Sess. Law Serv. at 2408 ("The changes in the law made by this Act apply only to a derivative proceeding instituted on or after the effective date [Sept. 1, 2019] of this Act. A derivative proceeding instituted before the effective date of this Act is governed by the law in effect on the date the proceeding was instituted, and the former law is continued in effect for that purpose.").

[59] *See, e.g.*, *Shurberg v. La Salle Indus., Ltd.*, No. 04-15-00320-CV, 2016 WL 1128291, at *6–7 (Tex. App.—San Antonio Mar. 23, 2016, no pet.) (mem. op.); *Swank*, 258 S.W.3d at 661; *Fredericksburg Indus., Inc. v. Franklin Int'l, Inc.*, 911 S.W.2d 518, 521 (Tex. App.—San Antonio 1995, writ denied).

[60] *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (quoting *Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942)); *see In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2004) (orig. proceeding) (citing *Hall v. Douglas*, 380 S.W.3d 860, 873 (Tex. App.—Dallas 2012, no pet.)).

13

pronouncing the rule; thus, it is not jurisdictional.[61] Yet, standing's injury requirement stresses that it is the plaintiff bringing the action who "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact.'"[62] For this reason, we have, until now, recognized the *Wingate* rule as a standing inquiry. In *Linegar v. DLA Piper LLP (US)*, we observed that a standing analysis "begins with determining the nature of the wrong being alleged and whether there was a causal connection between a defendant's conduct and the injury caused by the alleged wrong."[63] We then immediately—and correctly—described the *Wingate* rule as a constitutional standing inquiry, and we earlier reaffirmed that principle in the limited partnership context.[64] Courts of appeals have followed suit.[65] We should not depart from that path now and relegate traditional standing analysis to merely a question of capacity to sue.

Our Court's departure places Texas law at odds with Delaware law. The Supreme Court of Delaware recently reaffirmed in *El Paso Pipeline GP Co. v. Brinckerhoff* that, in Delaware, a limited partner must establish standing to invoke the court's jurisdiction.[66] "[A]s a preliminary matter, a party must have standing to sue in order to invoke the jurisdiction of a Delaware court,"

---

[61] *Ante* at __ n.10 (quoting *Lake v. Cravens*, 488 S.W.3d 867, 888 (Tex. App.—Fort Worth 2016, no pet.)). The Court also notes that the defendants seek a take-nothing judgment rather than dismissal for lack of jurisdiction. The defendants, however, argue that EMC Cement's lack of standing is "jurisdictional" and thus was not waived.

[62] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *see DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008).

[63] *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016).

[64] *Id.* at 279–80 (citing *Wingate*, 795 S.W.2d at 719); *Fisher*, 433 S.W.3d at 527.

[65] *See, e.g.*, *Neff v. Brady*, 527 S.W.3d 511, 521–22 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Guerrero-McDonald v. Nassour*, 516 S.W.3d 198, 203–06 (Tex. App.—Eastland 2017, no pet.); *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360–62 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Hall*, 380 S.W.3d at 872–74.

[66] *See El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1256–65 (Del. 2016). Contrary to the majority's assertion, the Supreme Court of Delaware directly addressed standing and dismissed the action, observing that: "Once standing is lost, the court lacks the power to adjudicate the matter . . . ." *Id.* at 1256 (footnotes omitted); *see id.* ("The concept of standing . . . refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance." (quoting *Schoon v. Smith*, 953 A.2d 196, 200 (Del. 2008))); *see also Ante* at __ n.16.

14

and a limited partner's standing "is therefore properly viewed as a threshold issue to 'ensure that the litigation before the tribunal is a "case or controversy" that is appropriate for the exercise of the court's judicial powers.'"[67] In that case, a limited partner of a publicly traded Delaware limited partnership derivatively sued the partnership's general partners for claims arising from transactions between the partnership and an entity that indirectly owned 100% of the general partner.[68] The limited partner alleged that the partnership overpaid for the assets involved in the disputed transactions.[69] Following a merger, the general partner moved to dismiss the limited partner's claim for lack of standing because the claim became an asset of the acquiring corporation. The limited partner countered that he had standing to bring the claim because it was "dual" in nature, causing him a direct injury.[70] In rejecting that contention, the Delaware Supreme Court explained that the limited partner's claim was solely derivative because it did not feature an injury unique to

---

[67] *Id.* at 1256 (first quoting *Ala. By–Prods. Corp. v. Cede & Co.*, 657 A.2d 254, 264 (Del. 1995); and then quoting *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003)); *see id.* ("We have observed that "'[a] change in the parties" standing may result from a myriad of subsequent legal or factual causes that occur while the litigation is in progress.'" (quoting *Gen. Motors Corp. v. New Castle County*, 701 A.2d 819, 824 (Del. 1997))).

[68] *Id.* at 1252–53.

[69] *Id.* at 1254.

[70] *See id.* at 1254–55, 1260–64.

the individual partner[71]—and thus, the chancery court erred in "deviating from an entity-level remedy."[72] We should remain in accord with Delaware law.[73]

Instead, the Court relies on *Franchise Tax Board of California v. Alcan Aluminum*, in which the United States Supreme Court assumed that that an individual shareholder who solely owned a corporation had standing to seek injunctive relief from a taxing authority.[74] In denying relief, the Supreme Court in that case "assume[d] that respondents ha[d] standing as stockholders," concluding that they sufficiently stated an Article III injury in their challenge to the board's accounting rules.[75] The Supreme Court explained that the requirement that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights

---

[71] *Id.* at 1263–64 ("[The limited partner] never alleged and did not prove that the Partnership's overpayment increased the General Partner's or the [General Partner's] Parent's control at the expense of the limited partners. . . . We decline . . . to hold here that the extraction of solely economic value from the minority by a controlling stockholder constitutes direct injury. To do so would . . . 'largely swallow the rule that claims of corporate overpayment are derivative' by permitting stockholders to 'maintain a suit directly whenever the corporation transacts with a controller on allegedly unfair terms.'" (quoting *Caspian Select Credit Master Fund Ltd. v. Gohl*, C.A. No. 10244-VCN, 2015 WL 5718592, at *5 (Del. Ch. Sept. 28, 2015))).

[72] *Id.* at 1264.

[73] *See Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016); *In re Fisher*, 433 S.W.3d 523, 527–28 (Tex. 2014) (orig. proceeding). Any reliance on *Appriva Shareholder Litigation Co. v. EV3, Inc.*, 937 A.2d 1275 (Del. 2007), for the proposition that standing is not a jurisdictional concept in Delaware is misplaced. In that case, the court also acknowledged that standing implicates subject-matter jurisdiction: "First, because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Id.* at 1284 (quoting *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003)). The court then determined the appropriate standard of review and procedure for determining a standing issue when jurisdictional facts are intertwined with the merits; the court did not hold that standing was relegated to capacity to sue. *See id.* at 1284–86. Further, in neither *In re Infinity Broadcasting Corp. Shareholders Litigation*, 802 A.2d 285 (Del. 2012) (per curiam), nor *Voigt v. Metcalf*, C.A. No. 2018-0828-JTL, 2020 WL 614999 (Del. Ch. Feb. 10, 2020), does the court address whether derivative standing requirements are jurisdictional. *See Ante* at __ n.16. Neither case answers whether a challenge to ownership of a partnership claim implicates jurisdictional standing. In *Infinity Broadcasting Corp.*, a shareholder failed to properly object to a class-action settlement agreement. *See Infinity Broad. Corp. S'holders Litig.*, 802 A.2d at 289. The case did not consider whether the shareholder sought to personally recover for a corporate injury. In *Voigt v. Metcalf*, the defendants failed to address whether the stockholder plaintiffs complied with the derivative suit requirements when they derivatively sued the defendants. *See Metcalf*, 2020 WL 614999, at *8 n.3. The defendants, however, did not argue that the plaintiffs sought to directly recover for a corporate claim or that the plaintiffs lost the ability to derivatively represent the corporation.

[74] *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335–36 (1990); *see Ante* at __.

[75] *Franchise Tax Bd.*, 493 U.S. at 336, 338.

16

or interests of third parties" was a "prudential" standing doctrine.[76] The Court then categorized the shareholder standing rule as "prudential," but it did not discuss whether the rule better implicates constitutional standing's legal injury requirement. The Court later described "prudential" standing limitations as those that arise from "judicially self-imposed limits," rather than Article III of the Constitution,[77] explaining that prudential standing encompasses three notions: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."[78]

Since its *Franchise Tax* decision, the Supreme Court has retreated from the concept of "prudential" standing. The "zone-of-interests" test is now viewed as a matter of statutory interpretation.[79] The bar against generalized grievances is now a matter of constitutional standing.[80] So, too, is the assertion of another's legal right—it is someone else's "case" or "controversy" under Article III. Invoking another's legal right and injury should not be relegated to a disappearing "prudential" standing paradigm. Because *Wingate* answers a fundamental standing question—whether a claim embodies the plaintiff's primary legal right, or the

---

[76] *Id.* at 335–36.

[77] *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11–12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

[78] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (quoting *Newdow*, 542 U.S. at 12).

[79] The zone-of-interests test inquires whether the plaintiff has "a right to sue" under a "substantive statute." *Id.* (quoting *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 676 (D.C. Cir. 2013) (Silberman, J., concurring)).

[80] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992); *see Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011).

partnership's—a challenge to ownership of a business organization's claim implicates constitutional standing.[81]

**B**

We should recognize that *Pledger v. Schoellkopf* has been abrogated.[82] We held in that case that "whether a claim brought by a shareholder actually belongs to the corporation is a matter of capacity."[83] The court of appeals in this case relied on *Pledger* to characterize a challenge to a limited partner's right to recover as a capacity question, which could be waived for lack of a verified pleading.[84]

As courts of appeals have noted in distinguishing it, however, *Pledger* did not analyze shareholder standing.[85] In *Pledger*, we did not consider the rule that "to recover individually, a stockholder must prove a personal cause of action and personal injury."[86] As we explained in *Wingate*, this rule means that "individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock."[87] As numerous courts of appeals have recognized, we should so hold in the case of

---

[81] *See Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279–80 (Tex. 2016) (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990)).

[82] *Pledger v. Schoellkopf*, 762 S.W.2d 145 (Tex. 1988).

[83] *Ante* at __ (citing *Pledger*, 762 S.W.2d at 146). A capacity defense does not protect the entity's interest in preserving redress for its injuries with the entity—the entity may not be a party to the suit.

[84] 579 S.W.3d 390, 401 (Tex. App.—Waco 2017) (first citing *Pledger*, 762, S.W.2d at 145–46; then citing *Baker v. City of Robinson*, 305 S.W.3d 783, 788 (Tex. App.—Waco 2009, pet. denied); and then citing *WHM Props. v. Dallas County*, 119 S.W.3d 325, 330–31 (Tex. App.—Waco 2003, no pet.)).

[85] *See Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249–50 (Tex. App.—Dallas 2005, no pet.) ("*Pledger* cannot stand for the simplistic proposition that a challenge to a stakeholder's bringing a suit to recover personally for corporate wrongs raises an issue of capacity only. The *Pledger* court did not, indeed could not, discuss standing because that issue was not before it.").

[86] *Wingate*, 795 S.W.2d at 719.

[87] *Id.* (quoting *Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942)).

18

an individual limited partner.[88] The *Wingate* rule is grounded in *standing* principles: a shareholder lacks standing to bring claims for injury to the corporation because the cause of action is vested in the corporation.[89]

Requiring partnership standing to recover partnership damages does not conflict with our recent jurisprudence that statutory prerequisites to suit are not jurisdictional.[90] Whether an injured party satisfies statutory prerequisites and whether it possesses the primary legal right to seek redress in our courts are separate issues.[91]

The Texas Legislature has once before corrected the course of Texas law with respect to the jurisdiction of our state courts. Sixteen years ago, our Court relied on *Kazi* to hold that the

---

[88] *Accord Schertz Bancshares Corp. v. Burris*, No. 04-19-00209-CV, 2020 WL 20161, at *2–3, (Tex. App.—San Antonio Jan. 2, 2020, pet. filed); *Guerrero-McDonald v. Nassour*, 516 S.W.3d 198, 204–06, 209 (Tex. App.—Eastland 2017, no pet.); *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 361 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Shurberg v. La Salle Indus., Ltd.*, No. 04-15-00320-CV, 2016 WL 1128291, at *6–7 (Tex. App.—San Antonio Mar. 23, 2016, no pet.) (mem. op.); *Hodges v. Rajpal*, 459 S.W.3d 237, 247, 249–50 (Tex. App.—Dallas 2015, no pet.); *BJVSD Bird Fam. P'ship, L.P. v. Star Elec., L.L.C.*, 413 S.W.3d 780, 785–86 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Hall v. Douglas*, 380 S.W.3d 860, 873–874 (Tex. App.—Dallas 2012, no pet.).

[89] *See, e.g.*, *Morton Salt, Inc. v. Walker*, No. 12-17-00036-CV, 2017 WL 3048576, at *2–3 (Tex. App.—Tyler July 19, 2017, pet. denied) (mem. op.); *Swank v. Cunningham*, 258 S.W.3d 647, 662–64 (Tex. App.—Eastland 2008, pet. denied); *Fredericksburg Indus., Inc. v. Franklin Int'l, Inc*., 911 S.W.2d 518, 520–21 (Tex. App.—San Antonio 1995, writ denied) (holding shareholder lacked standing to sue corporate supplier for defective glue, claim for corporation's lost profits belonged solely to corporation); *White v. Indep. Bank, N.A.*, 794 S.W.2d 895, 897–98 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (holding bank's customer "did not have standing to [individually] bring suit for damages to" the corporation of which he was an officer); *see also Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1176 (5th Cir. 1985) ("[W]e think it clear that a partnership cause of action belongs to and is the specific property of the partnership, and that one merely owning an interest in the partnership may not, absent exceptional circumstances, bring suit either on such a cause of action as a whole, whether in the name of the partnership or in his own name, or for the fractional share of such a cause of action corresponding to his fractional interest in the partnership.").

[90] *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000); *Sneed v. Webre*, 465 S.W.3d 169, 186–87 (Tex. 2015) (noting the court's preference not to classify a "matter as one of [subject-matter] jurisdiction,' . . . , [doing so] 'opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment.'" (quoting *Kazi*, 12 S.W.3d at 76)).

[91] *See Kazi*, 12 S.W.3d at 76–77 (providing that constitutional jurisdiction and whether a plaintiff has satisfied statutory grounds to suit are distinct issues).

19

Texas Tort Claims Act's notice requirements were not jurisdictional.[92] In response, the Legislature amended the Texas Tort Claims Act to make clear that the Act's notice requirements are jurisdictional.[93] Thus, our Court recognizes that the Texas Tort Claims Act's notice requirements remain jurisdictional prerequisites.[94] As the Legislature acted to make the Texas Tort Claim Act's notice provisions clearly jurisdictional, the Legislature similarly should consider amending the Business Organizations Code to ensure that the *Wingate* principle remains jurisdictional. A limited partner has standing to recover for its personal injuries.[95] Absent derivative standing, however, a limited partner has no standing to directly recover the partnership's damages. Even if a limited partner properly asserts derivative standing, any recovery benefits the partnership and does not directly flow to the individual partner.[96]

*        *        *

To grant limited partners standing to sue individually for claims against other partners or a third party for an injury to the partnership causes instability in business organizations and costly litigation for claims that should be dismissed immediately, absent compliance with the Legislature's derivative standing rules.

---

[92] *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 359, 364 (Tex. 2004); *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004); *see* TEX. CIV. PRAC. & REM. CODE § 101.101(a).

[93] *See* Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (codified at TEX. GOV'T CODE § 311.034).

[94] *Wordsdale v. City of Killeen*, 578 S.W.3d 57, 74 n.113, 77 (Tex. 2019).

[95] *In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014) (orig. proceeding).

[96] *See White v. Indep. Bank, N.A.*, 794 S.W.2d 895, 898 (Tex. App.—Houston [1st Dist] 1990, writ denied); *see also In re El Paso Pipeline Partners, L.P.*, 132 A.3d 67, 120 (Del. Ch. 2015).

Because EMC Cement claimed an injury based on lost value of the partnership, we should dismiss its claim for lack of standing.[97] As a limited partner, it lacked standing to recover the partnership's lost profits.[98] Because standing implicates subject-matter jurisdiction, the court of appeals erred in concluding that the defendant partners waived a challenge to this direct recovery.[99] This Court compounds that error by disregarding a partnership's status as an independent entity in concluding that derivative standing requirements may be waived—and a partnership's recovery taken—in a limited partner's enforceable judgment, in contravention of the limited partnership's governing documents.

We instead should hold that EMC Cement, as a limited partner, has no legal standing to sue for an injury to EMC Production LP, the partnership, and dismiss EMC Cement's recovery on that claim for lack of jurisdiction. Because we do not, I respectfully dissent to all but Part IV of the Court's opinion and judgment.

_____
Jane N. Bland
Justice

**OPINION DELIVERED:** June 19, 2020

---

[97] *See Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016) (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 153 (2012)).

[98] *See Fisher*, 433 S.W.3d at 527–28; *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).

[99] 579 S.W.3d 390, 401 (Tex. App.—Waco 2017).

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 43906802
Status as of 06/22/2020 13:58:06 PM -05:00

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard B.Phillips, Jr. | | rich.phillips@tklaw.com | 6/19/2020 6:05:23 PM | SENT |
| Denise Stilz | | denise.stilz@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Charles T.Frazier | | cfrazier@adjtlaw.com | 6/19/2020 6:05:23 PM | SENT |
| Michelle Meuhlen | | michelle.meuhlen@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Robin Hart | | robin.hart@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| James Michael Heinlen | 24032287 | Michael.Heinlen@tklaw.com | 6/19/2020 6:05:23 PM | SENT |
| Nina Cortell | 4844500 | nina.cortell@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Charles Alfred Mackenzie | 12761550 | amackenzie@texas-appeals.com | 6/19/2020 6:05:23 PM | SENT |
| Angus Earl McSwain | 13861100 | mcswain@thetexasfirm.com | 6/19/2020 6:05:23 PM | SENT |
| Steven Gregory White | 21329050 | gwhite@grayreed.com | 6/19/2020 6:05:23 PM | SENT |
| Mark Ryan Trachtenberg | 24008169 | mark.trachtenberg@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Herbert J. Hammond | 8858500 | Herbert.Hammond@tklaw.com | 6/19/2020 6:05:23 PM | SENT |
| Joshua John White | 24048880 | JWhite@haleyolson.com | 6/19/2020 6:05:23 PM | SENT |
| Craig David Cherry | 24012419 | ccherry@haleyolson.com | 6/19/2020 6:05:23 PM | SENT |
| Andrew Guthrie | 24078606 | andrew.guthrie@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Allen Paulsen | 24060397 | ryan.paulsen@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Benjamin Lee Mesches | 24032737 | ben.mesches@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Scott Stolley | | Scott.Stolley@tklaw.com | 6/19/2020 6:05:23 PM | SENT |
| Mike Hatchell | | mike.hatchell@haynesboone.com | 6/19/2020 6:05:23 PM | SENT |
| Natalie Cooley | | natalie.cooley@tklaw.com | 6/19/2020 6:05:23 PM | SENT |
| Ashley Dekle | | dekle@thetexasfirm.com | 6/19/2020 6:05:23 PM | SENT |